UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

                                                   **MEMORANDUM & ORDER**

v.                                                22-CR-88 (WFK)

WILLIAM WHITE,

                   Defendant.

------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On April 16, 2024, William White ("Defendant") pled guilty to Count Seven of an eleven-count Indictment, charging him with Conspiracy to Obstruct Justice in violation of 18 U.S.C. § 1512(k). Plea Agreement ¶ 1, ECF No. 149; *see generally* Indictment, ECF No. 1. The Court now sentences Defendant and provides a complete statement of reasons, under 18 U.S.C. § 3553(c)(2), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to thirty (30) months' imprisonment; one (1) year of supervised release with the standard conditions of supervision; and a $100.00 mandatory special assessment.

      **I.**      **Background**

In April 2017, co-conspirators Dwayne Golden, Marquis Demacking Egerton, and Co-Conspirator #2 formed "EmpowerCoin," a web-based company purporting to offer cryptocurrency investments. Sealed Presentence Investigation Report ("PSR") ¶ 4. In May 2017, the co-conspirators, together with others, formed "Jet-Coin." *Id.* ¶ 5. Like "EmpowerCoin," "Jet-Coin" was a web-based company purporting to offer cryptocurrency investments. *Id.* The co-conspirators promised these companies would invest assets in Bitcoin, resulting in large returns to investors. *Id.* ¶ 12. But the companies never engaged in trading activity. *Id.* ¶ 12. Instead, the co-conspirators stole investors' money or used it to repay other investors. *Id.*

Following repeated complaints from investors about the lack of returns, the co-conspirators renamed EmpowerCoin to "ECoinPlus." *Id.* ¶¶ 17–18. The fraudulent activity continued under the "ECoinPlus" name. *Id.* ¶ 18. When investors complained about "Jet-Coin," the co-

1

conspirators claimed the website was suffering from technical difficulties and had been hacked. *Id.* ¶ 19. In total, "EmpowerCoin" and "ECoinPlus" received $23.2 million from investors. *Id.* ¶ 21. "Jet-Coin" received $21.7 million from investors. *Id.*

In February 2018, the Federal Trade Commission ("FTC") filed a complaint as part of an investigation into "Jet-Coin." *Id.* ¶ 23. The FTC served a subpoena on co-defendant Gregory Aggesen seeking testimony and documents related to "Jet-Coin." *Id.* Around the same time, Aggesen informed Co-Conspirator #1 his laptop needed to be erased before law enforcement searched his house. *Id.* ¶ 26. At the request of Golden and Aggesen, Defendant erased information related to "Jet-Coin" from Aggesen's laptop. *Id.* ¶ 24. Defendant then sent a laptop to the FTC, claiming it to be Aggesen's laptop. *Id.* A forensic examination revealed the laptop had been tampered with, and information on it had been deleted. *Id.*

Between March and April 2019, Defendant provided false information to an attorney for the FTC to obstruct the investigation into "Jet-Coin" and prevent Aggesen from being deposed. *Id.* ¶ 25. Due in part to Defendant's conduct, the FTC did not pursue Aggesen's deposition and settled the matter. *Id.*

On June 17, 2021, the Federal Bureau of Investigation ("FBI") served Aggesen with a grand jury subpoena for all records related to "EmpowerCoin," "ECoinPlus," and "Jet-Coin." *Id.* ¶ 27. In response to the subpoena, Defendant made false and misleading statements to Aggesen's defense counsel, who provided the statements to the U.S. Attorney's Office. *Id.*; Def. Objections to the PSR at 1, ECF No. 174.

*Procedural History*

On March 3, 2022, a grand jury returned an eleven-count Indictment against Defendant and his four co-defendants: Dwayne Golden, Gregory Aggesen, Marquis Demacking Egerton, and John Doe. *See generally* Indictment, ECF No. 1. On March 8, 2022, Defendant was arrested in Pennsylvania. Sealed PSR ¶ 28. On April 16, 2024, Defendant pled guilty to Count Seven of the Indictment, charging him with Conspiracy to Obstruct Justice in violation of 18 U.S.C. §1512(k). Plea Agreement ¶ 1, ECF No. 149. Pursuant to the plea agreement, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposed a term of imprisonment of 46 months or below. *Id.* ¶ 4.

## II. Legal Standard

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines operate as the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among similar defendants found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

## III. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### *1.  Family and Personal Background*

Defendant was born on July 2, 1967, in Harrisburg, Pennsylvania. Sealed PSR ¶ 57. Defendant's father worked various jobs in the state's higher education system as a loan processor and vice president of a local union. *Id.* Defendant's mother worked in a clerical position at the Central Pennsylvania blood bank. *Id.* Defendant was raised in a lower-middle class home. *Id.* ¶ 60. Defendant describes his family as loving but reports witnessing an abusive relationship between his parents. *Id.* Defendant states he did not personally experience abuse. *Id.*

Both of Defendant's parents suffered from medical complications throughout their lives. *Id.* ¶ 57. His father passed away in 2021; his mother in 2024. *Id.* Defendant acted as his mother's primary caretaker before her death. Def. Sent'g Mem. at 8. Prior to her death, Defendant's mother described Defendant as a wonderful, loving son and expressed her support

4

of him. Sealed PSR ¶ 57. Defendant has two brothers, with whom he maintains good relationships. *Id.* ¶ 59. One brother resides in Odessa, Florida, and works in finance. *Id.* The other resides in Camp Hill, Pennsylvania, and is an entrepreneur. *Id.* Both are aware of Defendant's arrest and supportive of him. *Id.*

Defendant is single and has never been married. *Id.* ¶ 61. While he has no biological children, he has an adopted daughter he has cared for since she was six. *Id.* His daughter is currently fifteen, enrolled in school, and in good health. *Id.* She and her adoptive mother are aware of Defendant's arrest and remain supportive of him. *Id.*

2.      *Educational and Employment History*

In 1985, Defendant graduated from Harrisburg High School in Harrisburg, Pennsylvania. *Id.* ¶ 68. Defendant attended Commonwealth University for a few months before he was dismissed for poor grades. *Id.* Defendant attended Harrisburg Area Community College from August 1986–December 1987 but did not graduate. *Id.* Defendant then attended Muhlenberg College from August 1990–August 1993. *Id.* He was placed on academic probation there for a year. *Id.* Defendant received a Cisco Certified Network Associate (CCNA) certification in March 2005 from Central Penn College in Summerdale, Pennsylvania. *Id.*

From 1988–1990, Defendant was employed as a Commercial Loan Clerk at Dauphin Deposit Bank. *Id.* ¶ 74. From 1992–1993, he worked as a Community Service Coordinator and Counselor for at risk youth. *Id.* ¶ 73. He was unemployed from 1993–1998. *Id.* ¶ 72. From 1998–2006, Defendant worked as a Network Administrator for Gannett Fleming. *Id.* ¶ 71. Since 2006, Defendant has been self-employed as a senior technician at the Internet Workshop, LLC. *Id.* ¶ 69. He also worked as a salesperson for Bath Savers, Inc., in 2023. *Id.* ¶ 70.

### 3. *Prior Convictions*

Defendant has no prior convictions.

### 4. *Physical and Mental Health*

Defendant experiences sporadic migraines and headaches, which have become more frequent since the instant case. *Id.* ¶ 64. Defendant takes Excedrin and Imitrex to treat his migraine symptoms. *Id.*

Defendant has no history of mental or emotional health problems. *Id.* ¶ 66.

### 5. *Substance Abuse*

Defendant used marijuana two to three times in college but has no other history of drug use. *Id.* ¶ 67. He consumes alcohol socially. *Id.*

### 6. *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

## B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct, which involved obstructing an FTC investigation into a fraud suspected of stealing millions of dollars from investors. Defendant produced tampered evidence and made false statements to assist his co-

conspirators. The Court's sentence will deter others from engaging in similar conduct and justly punish Defendant for his crimes. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to one count of Conspiracy to Obstruct Justice, in violation of 18 U.S.C. § 1512(k). Plea Agreement ¶ 1.

Defendant faces a maximum term of twenty years' imprisonment and no minimum term. 18 U.S.C. § 1512(c), (k). Defendant also faces a maximum term of three years' supervised release. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. §§ 3583(b), (e). Defendant is eligible for a term of probation of one to five years. 18 U.S.C. § 3561(c)(1). In the absence of extraordinary circumstances, the Court must impose one of the following as a condition of probation: a fine, restitution, or period of community service. 18 U.S.C. § 3563(a)(2).

In addition to facing terms of imprisonment and supervised release, Defendant faces other penalties. Defendant faces a maximum fine of $250,000.00, which he appears unable to pay. 18 U.S.C. § 3571(b); Sealed PSR ¶ 79. The Court is required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013(a)(2)(A).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

7

The applicable Guideline for Conspiracy to Obstruct Justice, 18 U.S.C. § 1512(k), is U.S.S.G. §2J1.2. U.S.S.G. §2J1.2 directs the Court to apply U.S.S.G. §2X3.1 if (1) the offense involved obstructing the investigation or prosecution of a criminal offense, and (2) the resulting offense level is greater under that provision. Under U.S.S.G. §2X3.1(a)(1), the applicable base offense level is six levels lower than the offense level for the underlying offense.

The underlying offense is wire and money fraud laundering, for which the applicable Guideline is U.S.S.G. §2B1.1(a)(2). Pursuant to U.S.S.G. §2B1.1(a)(2), the base offense level is six because Defendant was not convicted of an offense referenced to that guideline.

Probation and the Government argue for a twenty-level enhancement under U.S.S.G. §2B1.1(b)(1)(K) because the instant offense involved more than $9,500,000.00 and less than $25,000,000.00 in losses. Sealed PSR ¶ 21; Gov't Sent'g Mem. at 4. Defense counsel objects, contending the loss amount was not reasonably foreseeable to Defendant at the time of his obstructive conduct. Def. Supp. Objections to PSR, ECF No. 177.[1] Two levels are added because the offense involved ten or more victims, pursuant to U.S.S.G. §2B1.1(b)(2)(A)(i). Two more levels are added under U.S.S.G. §2B1.1(b)(10) because the offense involved sophisticated means. With the loss enhancement recommended by Probation and the Government, the adjusted offense level for the underlying offense is thirty (30).

Because Defendant's applicable base offense level is six levels less than the offense level for wire and money fraud laundering, Defendant has a base level of twenty-four (24). U.S.S.G. §2X3.1(a)(1). All parties agree certain reductions to the total offense level apply, including a two-level reduction under U.S.S.G. §3E1.1 (Acceptance of Responsibility) and a one-level reduction

---

[1] Defense counsel concedes some loss was foreseeable to Defendant. Def. Supp. Objections to PSR at 1. However, defense counsel argues "it has not been established by a preponderance that [Defendant] knew, or should have known, the amount exceeded $9,500,000." *Id.*

8

under U.S.S.G. §3E1.1(b) (timely notice to the Government of Defendant's intention to enter a guilty plea). Plea Agreement ¶¶ 46–47; Gov't Sent'g Mem. at 4. Defendant qualifies for another two-level reduction for being a zero-point offender. U.S.S.G. §4C1.1.

Probation recommends a sentence of one year and one day of imprisonment; one year of supervised release; and a $100.00 mandatory special assessment. Sealed Revised Prob. Sent'g Rec. at 1, ECF No. 182-1. The Government recommends a sentence of 30 to 37 months' imprisonment. Gov't Sent'g Mem. at 9. Defense counsel recommends a sentence of time served with three years' supervised release, or a term of probation. Def. Sent'g Mem. at 10. This Court appreciates the sentencing arguments raised by all parties and has considered each in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The parties have not raised arguments regarding unwarranted sentencing disparities in this case. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is not applicable in this case.

### IV. Conclusion

For the reasons set forth above, the Court sentences Defendant to thirty (30) months' imprisonment; one (1) year of supervised release with the standard conditions of supervision; and a $100.00 mandatory special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's apparent inability to pay. The Court excuses Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and the Addendum thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED.

s/ WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 23, 2025
   Brooklyn, New York